UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
C.B. and R.B. on behalf of W.B.,

                Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT
OF EDUCATION,

                Defendant.
----------------------------------------------------X

**MEMORANDUM
and ORDER**

02 CV 4620 (CLP)

On July 30, 2002, plaintiffs C.B. and R.B, acting on behalf of their son W.B., commenced this action[1] against the New York City Department of Education (the "Department") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1445 (1999), seeking modified de novo review of decisions issued by an impartial Hearing Officer and State Review Officer denying plaintiffs' request for reimbursement for certain educational services provided to W.B. Following the parties' consent to the Court's jurisdiction, this Court issued a decision on June 10, 2005, granting summary judgment in favor of plaintiffs based on the Court's finding that both the Hearing Officer and the State Review Officer applied the wrong standard of review in denying the plaintiffs' request for reimbursement for tuition and other services provided to W.B. This Court further awarded reasonable attorneys' fees under the IDEA, 20 U.S.C. § 1415(i)(3), but ordered the parties to submit papers relating to the calculation of these fees.

Presently pending before this Court is plaintiffs' request for attorneys' fees and costs in the amount of $89,341.62, plus $9,126 incurred in preparation of the fee application.

---

[1] Plaintiffs initially commenced this action in the Southern District of New York on July 30, 2002. The case was subsequently transferred to this Court on August 16, 2002.

## DISCUSSION

The fee shifting provision of the IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B); see A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, 67 (2d Cir. 2005) (holding that the "IDEA grants courts the discretionary power to 'award reasonable attorneys' fees . . . [to] the prevailing party' '[i]n any action or proceeding brought under' the IDEA"). The Second Circuit has made clear that interpretation of the IDEA's fee shifting provision is governed by those standards applicable to the issuance of attorneys' fees in federal civil rights actions under 42 U.S.C. § 1988(b), see A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d at 73 n.9, which provides that "[i]n any action or proceedings to enforce a provision of [the federal civil rights laws], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. 42 U.S.C. § 1988(b). For purposes of awarding fees, a plaintiff is considered a "prevailing party" "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992); see also Blackledge v. Carlone, 126 F. Supp. 2d 224, 231-32 (D. Conn. 2001).

In the case at hand, plaintiffs are entitled to attorneys' fees as prevailing parties because they prevailed in their claim that they were entitled to reimbursement for services provided to W.B. See Farrar v. Hobby, 506 U.S. at 111 (holding that "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must

obtain an enforceable judgment against the defendant . . . or comparable relief through a consent decree or settlement") (citations omitted). Moreover, even though plaintiffs were not successful at the administrative level, having lost on their claims before both the Hearing Officer and the State Review Officer, it is well settled that attorneys' fees may be awarded for representation in connection with the impartial hearing, as well as appeals to the state educational agency and federal court. See, e.g., G.M. ex rel. R.F. v. New Britain Bd. of Educ., 173 F.3d 77 (2d Cir. 1999); Mr. X v. New York State Educ. Dep't, 20 F. Supp. 2d 561 (S.D.N.Y. 1998); M.S. v. New York City Bd. of Educ., No. 01 CV 10871, 2002 WL 31556385 (S.D.N.Y. Nov. 18, 2002), aff'd, 407 F.3d 65 (2d Cir. 2005); R.E. v. New York City Bd. of Educ., Dist. 2, No. 02 CV 1067, 2003 WL 42017 (S.D.N.Y. Jan. 6, 2003); S.W. ex rel. N.W. v. Board of Educ. of the City of New York, 257 F. Supp. 2d 600 (S.D.N.Y. 2003), aff'd, 407 F.3d 65 (2d Cir. 2005).

The fact that a party may not succeed on all issues raised in the suit does not mean that he or she is not entitled to fees if otherwise determined to be a prevailing party. In Ruggiero v. Krzeminski, the Second Circuit held that even where a party achieves only partial success, the party may be considered "prevailing" if he succeeds on a significant issue in the litigation which achieves some of the benefit pursued. 928 F.2d 558, 564 (2d Cir. 1991) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see also Raishevich v. Foster, 247 F.3d 337, 345 (2d Cir. 2001) (holding that even where a plaintiff is awarded an amount less than he sought, fees are warranted, so long as the relief obtained is "'of the same general type' as the relief sought"); Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir.) (awarding fees after a jury verdict of nominal damages where plaintiffs "prevailed on a significant legal issue" and citing Farrar v. Hobby, 506 U.S. at 121 (O'Connor, J., concurring), for the proposition that "an award of nominal damages

can represent a victory in the sense of vindicating rights even though no actual damages are proved"), cert. denied, 513 U.S. 876 (1994). Furthermore, "success may be assessed by examining whether [a] plaintiff[ ] can 'point to a resolution of the dispute which changes the legal relationship between [plaintiff] and the defendant[ ].'" Ruggiero v. Krzeminski, 928 F.2d at 564 (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989)). Under Section 1988(b) there is "a presumption" that a prevailing party "should recover an attorney's fee unless special circumstances would render such an award unjust." Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982); see also Raishevich v. Foster, 247 F.3d at 344 (noting that a district court's discretion to deny attorneys' fees is "narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees unless special circumstances would render an award unjust").

In light of this Court's decision granting summary judgment in favor of plaintiffs on their claims for reimbursement, the Court finds that they are prevailing parties for purposes of the fee shifting provision, and awards fees and costs as set forth below.


A. Calculating the Lodestar

In calculating the proper measure of a fee award, courts first determine a "lodestar" figure by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. at 433; I.B. v. New York City Dep't of Educ., 336 F.3d 79, 80 (2d Cir. 2003); G.M. ex rel. R.F. v. New Britain Bd. of Educ., 173 F.3d at 84; F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987). "While there is a strong presumption that this amount represents a reasonable fee," Cowan v. Ernest

4

Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 Fed. Appx. 36 (2d Cir. 2002), this resulting "lodestar" figure may be adjusted upward or downward based on other considerations. See Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). The court is, however, required to state specific reasons for any determination that reduces or increases the lodestar figure. See DiFilippo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985).

It is well established that "'[t]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (quoting Hensley v. Eckerhart, 461 U.S. at 437). In determining whether a fee is appropriate, the court considers a number of factors, including the "'difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved.'" F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d at 1263 (quoting In re Schaich, 391 N.Y.S.2d 135, 136 (2d Dep't), appeal denied, 397 N.Y.S.2d 1026 (1977)). The ultimate determination is whether, considering all the circumstances, the fee requested is "reasonable." See Hensley v. Eckerhart, 461 U.S. at 433-37.

The Second Circuit has held that any attorney who seeks compensation through the courts "must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); see also Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); Louima v. City of New York, No. 98

5

CV 5083, 2004 WL 2359943, at *81 (E.D.N.Y. Oct. 5, 2004), aff'd, 163 Fed. Appx. 70 (2d Cir. 2006). The records must be maintained with sufficient specificity "to enable the Court to determine whether the hours billed were duplicative or excessive." Dailey v. Societe Generale, 915 F. Supp. 1315, 1328 (S.D.N.Y. 1996), aff'd in relevant part, 108 F.3d 451 (2d Cir. 1997).


B. Excessive Rates

In support of plaintiffs' fee application, counsel for plaintiffs, Gary S. Mayerson, Esq., has submitted an Affidavit, dated July 21, 2005 ("Mayerson Aff."), along with the affidavit of his associate, Christina D. Thivierge, Esq., dated July 21, 2005 ("Thivierge Aff."), in which she sets forth her educational background and experience. In his Affidavit, Mr. Mayerson details his hourly rate of $350-$375 per hour,[2] an hourly rate of $150-$225 per hour for Ms. Thivierge, and a rate of $90 per hour charged by the firm for paralegal time. (Mayerson Aff. ¶¶ 21-22). Mr. Mayerson represents that other than a few *pro bono* cases handled each year by the firm, "every single one of our clients is charged the same hourly rates." (Id. ¶ 22) (emphasis omitted). He has also submitted detailed contemporaneous billing records, showing the dates that services were rendered, the nature of the tasks performed and the amount of time spent on each task, in accordance with the requirements set forth in Carey. See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1148.

Defendant challenges plaintiffs' counsel's billing rates of $350-$375 an hour for Gary Mayerson and $150-$225 per hour for his associate, Christina Thivierge, as unreasonable

---

[2]Mr. Mayerson notes that a rate of $435 per hour is charged for time spent preparing the fee application.

because defendant asserts that the rates are higher than the prevailing rates in the Eastern District of New York. (Def.'s Mem. at 4-10).[3] See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d at 1159 (noting that the rates charged must be "'in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation'" (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)); see also Rotella v. Board of Educ. of the City of New York, No. 01 CV 0434, 2002 WL 59106, at *2 (E.D.N.Y. Jan. 17, 2002) (stating that "this court finds that the prevalent market rate in this district is in the range of $200 to $250 for partners and between $100 to $200 for junior and senior associates"). Indeed, the Second Circuit has held that the rates used to calculate the "lodestar" should be in line with those rates prevailing in "'the district in which the court sits.'" Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997) (quoting Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)); see also Arbor Hill Concerned Citizen's Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 95–96 (2d Cir. 2004).

In support of his fee rates, Mr. Mayerson has supplied his curriculum vitae, in which he represents that he graduated from Georgetown University Law Center in 1979 and was admitted to practice law in New York State in January 1980. (Mayerson Aff. ¶ 5; Ex. C). He is also admitted to practice in this Court, the Second, Third, Fifth, Sixth, Seventh, Tenth, and Eleventh Circuits, the States of Florida and New Jersey, and the Eastern Districts of Tennessee and Pennsylvania. (Id. ¶ 5). From 1979 to 1996, Mr. Mayerson practiced almost exclusively as a commercial trial lawyer. (Id. ¶ 6).

---

[3]Citations to "Def.'s Mem." refer to the Defendant's Memorandum of Law in Opposition to Plaintiffs' Application for Attorneys' Fees, dated September 16, 2005.

According to Mr. Mayerson, in 1996, as a result of a personal experience, he began to litigate claims under the IDEA on behalf of families with children diagnosed with autism spectrum disorders. (Id.) He studied the literature on the subject and met with researchers and scientists in the field of autism, developing a certain expertise in the area. (Id.) According to counsel, "[l]ess than two years later, with the reported incidence of autism dramatically on the rise, the demand for my services and special knowledge exploded." (Id. ¶ 7). Now he concentrates "virtually 100% of [his] law practice" on representing children with autism spectrum disorders in civil rights litigation, including "many hundreds of children" in approximately 30 states. (Id. ¶ 18) (emphasis in original). In Mr. Mayerson's Reply Affidavit, dated October 10, 2005 ("Mayerson Reply Aff."), counsel further represents that while there are several large firms that represent school districts in this type of litigation, there is a "very small bar" who represent children and virtually all of them are sole practitioners or work in small law offices. (Mayerson Reply Aff. ¶¶ 11-12). Moreover, according to Mr. Mayerson, his firm has an "even narrower niche" as the "only law practice in the United States that is dedicated almost exclusively to representing children and adolescents with autism spectrum disorders." (Id. ¶ 12).

In further support of his claim to special expertise in the field, Mr. Mayerson represents that since 1998, he has made numerous presentations at colleges, hospitals, and universities on the subject of educational rights. (Mayerson Aff. ¶ 20). Additionally, he was the only attorney representing children impacted by the statute – as opposed to lawyers representing educational agencies – who was invited to testify before the House Committee on Government Reform to address the issue of whether the IDEA statute was "Working as Congress Intended" with regard to autistic children. (Id. ¶ 20). He has also published a book, entitled How to Compromise with

Your School District without Compromising Your Child. (Id.)

In early 2000, he withdrew from the firm of Graubard Mollen & Miller, where, as a full partner, he was billing at the standard hourly rate of $395 per hour. (Id. ¶ 21). Upon founding his own firm over five years ago, Mr. Mayerson reduced his hourly rate to $350 per hour and did not raise it until April 2002, at which time he began charging $375 per hour. (Id.) In 2005, he raised his rate to $435 per hour.[4] (Id.)

His associate,[5] Ms. Christina D. Thivierge, Esq., graduated from the City University of New York School of Law in May 2000 and was admitted to practice in New York State in May 2001. (Thivierge Aff. ¶ 2). She was also admitted to practice in state and federal courts in New Jersey in November 2000, and to this Court in February 2003. (Id.) She is also admitted in the Southern District of New York, the Southern District of Indiana, and the Second and Seventh Circuits. (Id.)

Ms. Thivierge joined Mayerson & Associates in the fall of 2000, where she has worked on this case throughout the underlying administrative proceeding and appeal, as well as during the federal appeal. (Id. ¶¶ 2-3). She explains that prior to law school, from 1989 to 1996, she worked in various capacities with individuals with developmental disabilities. (Id. ¶ 6). She attests to experience drafting Individual Education Plans ("IEP"), behavior intervention plans, and other support plans for these individuals. (Id.) She confirms that her billing rate as a

---

[4]He seeks that rate only in connection with time spent preparing the fee application. (See id. n.4).

[5]Another associate, Randi M. Rothberg, Esq., a 2003 law graduate, worked on the reply papers, charging at the rate of $150 per hour. (See Mayerson Reply Aff., Ex. H).

"senior associate"[6] was $225 per hour. (Id. ¶ 3). That rate was just recently increased to $295

per hour. (Id.) Time records submitted by Mr. Mayerson indicate that before Ms. Thivierge was

considered a "senior associate," she billed her time at $150-$195 per hour. (See Mayerson Aff.,

Ex. F).

In determining the reasonableness of an attorney's rates, the Second Circuit has indicated

that courts may consider evidence of prevailing rates for similar services beyond the fee

application itself. See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059

(2d Cir. 1989), cert. denied, 496 U.S. 905 (1990). In addition to the parties' evidentiary

submissions, the Court may also consider its own experience and familiarity with the case and

with rates generally charged. See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34

F.3d at 1160 (noting that a "district court's 'choice of rates [is] well within [its] discretion'")

(quoting Cabrera v. Jakabovitz, 24 F.3d at 393).

> To inform and assist the court in the exercise of its discretion, the
> burden is on the fee applicant to produce satisfactory evidence – in
> addition to the attorney's own affidavits – that the requested rates
> are in line with those prevailing in the community for similar
> services by lawyers of reasonably comparable skill, experience,
> and reputation.

Blum v. Stenson, 465 U.S. at 895 n.11.

Indeed, one factor considered by the courts as evidence of a reasonable rate is the rate

paid by counsel's fee paying clients. See Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.,

246 F.3d 142, 151 (2d Cir. 2001); Luciano v. Olsten Corp., 109 F.3d at 116 (noting that

---

[6]It appears from the billing records that Mr. Mayerson's firm began charging Ms.
Thivierge's time at the rate of $225 in May 2002. Thus, she was considered a "senior associate"
after practicing law for less than two years.

counsel's "actual billing practice" was one of many factors "subsumed within this lodestar calculation"); Parrish v. Sollecito, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y. 2003) (noting that a "reasonable starting point for determining the hourly rate for purposes of the lodestar calculation is the attorney's customary rate"). Here, plaintiffs' counsel contends that the fees requested are based on rates normally paid by counsel's fee paying clients (Mayerson Aff. ¶ 22), thus providing "a strong indication of what private parties believe is the 'reasonable' fee." Crescent Publ'g Group, Inc. v. Playboy Enters., Inc., 246 F.3d at 151 (applying the lodestar method to calculation of attorneys' fees in a suit brought under the Copyright Act); see also Reid v. New York, 584 F. Supp. 461, 462 (S.D.N.Y. 1984) (finding the attorneys' customary rates to be "their 'market rates'"). In reviewing a trial court's reduction of attorneys' rates in In re Continental Illinois Securities Litigation, the Seventh Circuit noted:

> It is apparent what the district judge's mistake was. He thought he knew the value of the class lawyers' legal services better than the market did. . . . [I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order.

962 F.2d 566, 568 (7th Cir. 1992).

The defendant raises several arguments in support of its contention that the fees charged are higher than the relevant prevailing market rates. First, it points out that the Mayerson firm is a small law practice and "it is beyond dispute that the size of an attorney's firm is pertinent in determining the 'relevant community' for prevailing market rates." (Def.'s Mem. at 4-5) (citing Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d at 1058-59 (2d Cir. 1989) (internal citation omitted)). From this, defendant argues that the attorneys from the Mayerson firm should

be compensated at rates accorded to small firms or sole practitioners. (Def.'s Mem. at 5).

Defendant also disputes plaintiffs' counsel's claim that he should be compensated at the same rate as was awarded by the court in <u>A.R. v. New York City Department of Education</u>, 407 F.3d at 83. (Def.'s Mem. at 6). There, the Second Circuit upheld a fee award based on hourly rates between $350 and $375 per hour for Mr. Mayerson's work in an IDEA case. <u>See</u> <u>A.R. ex rel. R.V. v. New York City Dep't of Educ.</u>, 407 F.3d at 83. Defendant contends that despite that holding, "the Second Circuit did not rule that all attorneys' fees cases arising out of IDEA litigation must strictly adhere to the hourly rates set in that case." (Def.'s Mem. at 6) (citing <u>A.R. ex rel. R.V. v. New York City Dep't of Educ.</u>, 407 F.3d at 81). Thus, because <u>A.R.</u> was brought in the Southern District of New York, and not here in the Eastern District of New York, defendant contends that much lower hourly rates should be applied. (Def.'s Mem. at 6-8). Defendant further argues that the cases cited by plaintiff in support of rates similar to those awarded in <u>A.R.</u> were also brought in the Southern District of New York and are therefore not controlling in this district. (<u>See</u> Def.'s Mem. at n.1) (citing cases).

In support of the rates ranging from $225 to $250 per hour that defendant suggests for Mr. Mayerson's compensation, defendant cites <u>Hightower v. Nassau County Sheriff's Dep't</u>, 325 F. Supp. 2d 199 (E.D.N.Y. 2004). There, the court awarded $250 per hour to an experienced lawyer and $125 per hour to an inexperienced associate in what the court described as a "garden-variety Section 1983 excessive force case . . . involv[ing] no complex issues of law or novel evidentiary issues, with moderate documentary evidence." <u>Id.</u> at 212-214;[7] <u>see also</u> <u>Matthews v.</u>

_____

[7]The Court notes that this opinion was vacated in part upon reconsideration. <u>See</u> <u>Hightower v. Nassau County Sheriff's Dep't</u>, 343 F. Supp. 2d 191 (E.D.N.Y. 2004). On reconsideration, the district court recalculated the maximum rate awarded to plaintiff's attorneys

City of New York., No. 01 CV 2739, 2003 US Dist. LEXIS 16334 (E.D.N.Y. Aug. 22, 2003) (finding $300 per hour to be excessive and awarding experienced attorneys $250 per hour). Defendants urge the Court to compensate Mr. Mayerson at the rate of $225 per hour for the time he billed at $350 per hour, and at the rate of $250 per hour for the time spent on the federal appeal, which was billed at the rate of $375 per hour. (See Def.'s Mem. at 9) (citing Mayerson Aff., Ex. F).

Defendant also challenges the rates charged by Ms. Thivierge, urging the Court to reduce her rates from the $150-$225 per hour sought by plaintiffs to between $125 and $150 per hour. (Def.'s Mem. at 9-11). Defendant argues that such a reduction is justified because at the beginning of the time period during which she worked on the case, Ms. Thivierge was not admitted to the New York State bar, and indeed was not admitted until after the administrative hearing was completed. (Id. at 9).[8] During the period from May 2001 to May 2002, plaintiffs seek $195 per hour for Ms. Thivierge's services even though she had been practicing for less than a year at the beginning of that period. From May 2002 on, her time was billed at the rate of $225 per hour, despite her status as a very junior associate. (Id. at 9-10).

Defendant notes that in S.W. ex rel. N.W. v. Board of Education, 257 F. Supp. 2d 600, 607 (S.D.N.Y. 2003), aff'd, 407 F.3d 65 (2d Cir. 2005), the court found the hourly rate of $225

---

because it had overlooked pertinent limitations on attorneys' fees contained in the Prison Litigation Reform Act. See id. at 193.

[8]Defendant alleges that Ms. Thivierge's first billing entry on the case was entered on March 28, 2000, and that she billed for eight months before being admitted to practice in any jurisdiction. (Def.'s Mem. at 9). However, this Court was unable to locate a time-based billing entry for Ms. Thivierge before March 30, 2001. (See Mayerson Aff., Ex. F). At that time, she was billing at a rate of $150 per hour. (Id.)

per hour to be "unreasonable" for an associate at the Mayerson firm who had less than three years experience. The court reduced that associate's rate to $150 per hour. Id.; cf., Hine v. Mineta, 253 F. Supp. 2d 464, 466 (E.D.N.Y. 2003) (finding $225 per hour to be "in line with the market rates in the Eastern District of New York for experienced and skillful attorneys" in cases comparable to the employment discrimination suit at issue).

Defendant also challenges the rates billed for several other employees. (Def.'s Mem. at 11-12). Amanda L. Oren, who represents in her curriculum vitae that she graduated from CUNY Law School in May 2001 and worked for the Mayerson firm – first as an intern and then as an associate – from 2000-2005 (Mayerson Reply Aff., Ex. M), seeks fees that peak at $225 per hour.[9] (Mayerson Aff., Ex. F). Defendant complains that her rate is too high given her lack of experience, and notes that in S.W., the court reduced Oren's rate from $225 to $150 per hour based on her lack of experience. See S.W. ex rel. N.W. v. Board of Educ., 257 F. Supp. 2d at 607. Similarly, defendant complains about the rates charged for Timothy M. Mahoney, who graduated from CUNY Law School in May 2002, and for Cathy Crane, who were both billed out at the rate of $90.00 per hour. Since defendant assumes that Mr. Mahoney and Ms. Crane are paralegals,[10] it urges the Court to reduce the rates of these individuals to $50 per hour, an amount it claims is "generally applied to paralegal work" in the Eastern District. (Def.'s Mem. at 12).

---

[9]Although Ms. Oren also bills at varying rates of $55, $75, and $95 (see Mayerson Aff., Ex. F), defendant treats these entries as paralegal entries. (Def.'s Mem. at 12). Plaintiffs' counsel does not address this assertion in his reply papers, except to note that Ms. Oren was in law school during this time period, so the Court will adjust the rates (as necessary) in accordance with its paralegal rate analysis.

[10]Plaintiffs' counsel confirms that Ms. Crane was the firm's "lead paralegal,"and notes that Mr. Mahoney is a 2002 law school graduate who the firm billed at a paralegal rate. (Mayerson Reply Aff. ¶ 18).

Defendant further notes that in S.W., the court in the Southern District reduced the rates charged for paralegals working with Mr. Mayerson to $75 per hour. See S.W. ex rel. N.W. v. Board of Educ., 257 F. Supp. 2d at 607-08. Finally, Randi M. Rothberg, who received a J.D. from Cardozo Law School in June 2003, billed at the rate of $150 per hour for the brief time she spent working on the case.

Turning first to the rates which defendant advocates should be paid to Mr. Mayerson, the rates are, in effect, those that have been applied in the context of default motions, see, e.g., Schwartz v. Chan, 142 F. Supp. 2d 325, 332 (E.D.N.Y. 2001) (finding that $175 per hour was a reasonable rate in action resulting in default judgment); Walia v. Vivek Purmasir & Assocs., Inc., 160 F. Supp. 2d 380, 382 (E.D.N.Y. 2000) (increasing from $175 per hour to $200 per hour the rate for a sole practitioner in a gender discrimination litigation resulting in default judgment), or in cases which were several years older than this one.[11] See, e.g., Fernandez v. North Shore Orthopedic Surgery & Sports Med., P.C., No. 96 CV 4489, 2000 WL 130637, at *2–3 (E.D.N.Y. Feb. 4, 2000) (finding $225 per hour reasonable for partners for work performed on a Title VII action that went to trial); Greenridge v. Mundo Shipping Corp., 60 F. Supp. 2d 10, 12–13 (E.D.N.Y. 1999) (finding that reasonable rates in the Eastern District range from $200 to $225 for partners, $200 for senior associates, and $100 for junior associates for work performed in connection with a remand proceeding) (citing Perdue v. City Univ. of New York, 13 F. Supp. 2d 326, 345–46 (E.D.N.Y. 1998)). However, even in the Eastern District of New York, rates do not remain stagnant, and, as one court in this district noted when awarding rates of $400 per hour for

---

[11] In awarding fees, courts should use "'current rather than historic hourly rates.'" Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Missouri v. Jenkins, 491 U.S. 274, 284 (1989)).

a partner in a case brought in Suffolk County: "when reviewing caselaw that comments on prevailing market rates, a court must take into account the rapidity with which such rates can rise. Thus, a case decided even as recently as 2000 could be out of date as far as the rates are concerned." Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 64 (E.D.N.Y. 2003).

While the cases cited by defendants support a drastically reduced fee rate for cases in which defaults have occurred, much higher rates have been ordered as appropriate for experienced attorneys in larger firms dealing with more complex issues or areas of specialized practice. See, e.g., Duke v. County of Nassau, No. 97 CV 1495, 2003 WL 23315463, at *2-3 (E.D.N.Y. Apr. 14, 2003) (applying a rate of $300 per hour in calculating a fee award for an experienced civil rights trial attorney); General Motors Corp. v. Villa Marin Chevrolet, Inc., 240 F. Supp. 2d 182, 188 (E.D.N.Y. 2002) (construing both statutory and contractual entitlement to fees and finding to be reasonable hourly rates of between $315 and $375 for partners, $225 and $295 for senior associates and $140 to $225 for junior associates); Weil v. Long Island Sav. Bank, 188 F. Supp. 2d 265, 269 (E.D.N.Y. 2002) (finding counsel's "customary rates" of $371 to $450 per hour for a senior partner to be justified in a consumer class action); Leibovitz v. New York City Transit Auth., No. 95 CV 3860, 1999 WL 167688, at *1 (E.D.N.Y. Feb. 25, 1999) (awarding rate of $300 per hour to experienced attorney in employment discrimination litigation for work performed), rev'd on other grounds, 252 F.3d 179 (2d Cir. 2001).

Defendant argues that because the Mayerson firm is a small firm, with only several attorneys, the rates awarded should be less than that of other larger firms in the same community.

16

In 1998, this Court considered a fee application brought by attorneys in a small firm,[12] for work performed starting in 1997. See New Leadership Comm. v. Davidson, 23 F. Supp. 2d 301, 303–04 (E.D.N.Y. 1998). The district court approved rates higher than those urged by defendants here, finding as reasonable rates of $275 per hour for the partner, $200 for an experienced associate, $150 for a less experienced associate, and $65 for law students. Id. Other cases in this district have approved similar rates. See Nicholson v. Williams, No. 00 CV 2229, 2004 WL 4780498, at *10-12 (E.D.N.Y. Apr. 5, 2004) (awarding a rate of $300 per hour for the partner's time on a case after citing several decisions in 2003 where hourly rates of $250 per hour for non-trial work and $300 per hour for trial work in civil rights litigations were found reasonable) (citations omitted); King v. JCS Enters., Inc., 325 F. Supp. 2d 162, 169-70 (E.D.N.Y. 2004) (applying a rate of $295 per hour to the time billed by an experienced partner in ERISA litigation). Furthermore, in McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, the Second Circuit cautioned that "district courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate" used in the lodestar calculation. 450 F.3d 91, 97-98 (2d Cir. 2006) (affirming the district court's fee award while noting that "[o]verhead is not a valid reason for why certain attorneys should be awarded a . . . lower hourly rate" and that the "focus of the inquiry . . . must instead be determined by reference to the 'prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation'") (internal citation omitted).

Although the relevant market for evaluating the reasonableness of an attorney's fee has

---

[12]A search of the firm's attorney biographies indicates that the firm currently has 18 attorneys.

been described as the Eastern District of New York, this Court has previously questioned the

wisdom and fairness of utilizing a "prevailing rate" that differs on average by more than $100 per

hour depending on which side of the Brooklyn Bridge the court sits. See Nicholson v. Williams,

2004 WL 4780498, at *10 (citing New York State Nat'l Org. for Women v. Pataki, No. 93 CV

7146, 2003 WL 2006608, at *2 (S.D.N.Y. Apr. 30, 2003) (stating that "after reviewing recent fee

awards [for complex civil rights cases] litigated by small firms, the court finds that . . . rates of

$430.00 and $400.00 per hour . . . are on the high end but still within a reasonable range" for

attorneys in the Southern District, little more than a mile away from the Eastern District).

Here, the fees charged by counsel are less than, or comparable to, those charged in civil

rights cases brought in the Southern District several years ago. See, e.g., M.L. ex rel. M.P. v.

Board of Educ. of the City of New York, No. 02 CV 4288, 2003 WL 1057476, at *2–3 (S.D.N.Y.

Mar. 10, 2003) (awarding fees of $350 to $375 per hour for lead counsel and $225 per hour for

associates in administrative challenge to educational program of disabled child); Davis v. New

York City Hous. Auth., No. 90 CV 628, 2002 WL 31748586, at *2–3 (S.D.N.Y. Dec. 6, 2002)

(awarding $375 per hour in complex civil rights litigation for an attorney with more than 15 years

of experience); Gonzalez v. Bratton, 147 F. Supp. 2d 180, 212 (S.D.N.Y. 2001) (awarding $390

per hour for lead attorney in a small firm in the Southern District); Marisol A. v. Giuliani, 111 F.

Supp. 2d 381, 386 (S.D.N.Y. 2000) (finding that reasonable fees for attorneys in child welfare

civil rights litigation in the Southern District are $350 per hour for attorneys with more than

fifteen years of experience, $300 per hour for attorneys with ten to fifteen years of experience,

$230 to $250 per hour for attorneys with seven to nine years of experience, $180 to $200 for

attorneys with four to six years of experience and $130 to $150 per hour for attorneys with one to

three years of experience); Rodriguez v. McLoughlin, 84 F. Supp. 2d 417, 423 (S.D.N.Y. 1999) (applying a rate of $425 per hour for the partner and $240 per hour for a fifth year associate in a civil rights action).

Like Section 1988, the fee shifting provision in the Individuals with Disabilities Education Act is to be liberally construed. See F.R. v. Board of Educ., Plainedge Pub. Schs., 67 F. Supp. 2d 142, 147 (E.D.N.Y. 1999); Mid-Hudson Legal Servs., Inc. v. G & U, Inc., 578 F.2d 34, 37 (2d Cir. 1978) (stating that Section 1988 "must be applied broadly to achieve its remedial purpose" to encourage attorneys to pursue civil rights claims). The issues raised in this case, alleging violations of the IDEA, could just as easily have been raised in suits brought in Manhattan. Notably, the Second Circuit in A.R. v. New York City Department of Education has already approved Mr. Mayerson's fee rates in a similar action brought in the Southern District, finding them to be reasonable. 407 F.3d at 83. To suggest that Mr. Mayerson would be entitled to fees paid at the rate of $300 to $400 an hour had the suit been brought across the river in the Southern District of New York, but that he is only entitled to $225 an hour because venue lies in the Eastern District, troubles this Court. Other courts in the Eastern District have recognized that "it is not improper or unreasonable to apply Southern District rates to litigation in this district, at the judge's discretion, even if the litigation has taken place not in Brooklyn, a borough of New York City, but in Central Islip, a satellite courthouse of the Eastern District." Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp., 215 F.R.D. at 63 (applying rates of $280 per hour for a senior associate, $180 per hour for junior associates, and $110-$115 for paralegals, while reducing the partner's rate from $510 to $400 per hour). Indeed, the Second Circuit in A.R. v. New York City Department of Education, while recognizing that different rates may apply in the Southern and

Eastern Districts of New York, also acknowledged that:

> If [rates] are lower than those in another district, skilled lawyers
> from such other district will be dissuaded from taking meritorious
> cases in the district with lower rates. If lawyers are paid
> for their participation in IDEA proceedings that clearly arise in
> Queens at a rate considerably lower than what they are paid for
> representation in proceedings that clearly arise in Manhattan,
> experienced, Manhattan-based lawyers like . . . Mr. Mayerson may
> decide to devote their time and expertise to IDEA cases that arise
> in Manhattan rather than those cases in which parents are equally
> needful of their services, but that arise in Queens.

407 F.3d at 80-81. Thus, the Court made it clear that it was not setting "a crisp rule." Id. at 81.

As the Court in New Leadership Committee v. Davidson noted, caselaw limiting a court's

analysis of prevailing rates to the federal district in which that court is located "should not be

read so strictly as to create an unreasonable disincentive for Manhattan-based attorneys to bring .

. . suits in Brooklyn," suggesting that "it is not necessarily improper to consider what is occurring

minutes away across the East River." 23 F. Supp. 2d at 305. The district court in New

Leadership Committee thus concluded that courts in the Eastern District may consider attorney

fee rates awarded in the Southern District, as "it is within the court's broad discretion to consider

the unique circumstances of lawyers in New York City who practice in two different federal

jurisdictions within the same city." Id.

Accordingly, in determining a reasonable rate to apply to the time that Mr. Mayerson

expended on this case, this Court has considered not only the range of rates found to be

reasonable in the Eastern District of New York, but also the fact that Mr. Mayerson's rates were

approved by the court in A.R. v. New York City Department of Education. Moreover, in this

case, the Court finds that there are additional reasons to award fees at a higher rate than that

urged by the defendant. Unlike a simple default, which generally requires minimal effort and little expertise, or the Hightower case, which was described as a simple "garden variety" civil rights case, this case was highly complex and involved numerous legal issues and factual analysis based on the child's autism spectrum disorder. In fact, plaintiffs pursued their claims on an administrative level for some period of time, including appeals, and lost. Their victory in this Court, resulting in a 52-page opinion addressing numerous issues and arguments raised by defendants, is a reflection of the amount of time and effort expended by plaintiff's counsel and the importance of their dogged pursuit of plaintiffs' claims in the face of equally talented and determined counsel for defendants.

The Court further finds that plaintiffs' counsel has a special expertise and knowledge in the area of child education civil rights actions, and more specifically those cases involving autism spectrum disorders, that sets him apart from the average, mainstream attorney practicing in the area of civil rights litigation more generally. The Court finds that as a consequence of his special expertise and training, his papers to this Court contained arguments and analysis that were of a caliber higher than that of many attorneys practicing in similar subject areas in this district. Contrary to the possibility that other attorneys would have been willing to take the case at significantly lower rates or could have achieved the same result with less time expended, the Court finds that this was an extremely difficult case in which counsel, faced with two negative administrative rulings, might have been loathe to risk pursuing the matter further. This is clearly the type of case where the court should exercise its discretion in setting fee rates so as not to penalize the lawyer simply because his clients reside in Brooklyn and not Manhattan.

Having reviewed the various cases cited by both parties, and being familiar with the

21

prevailing rates in the community through the numerous fee applications reviewed by this Court, see Association for Retarded Citizens of Conn., Inc. v. Thorne, 68 F.3d 547, 554 (2d Cir. 1995) (holding that a court may "'rely in part on [its] own knowledge of private firm hourly rates in the community'") (internal citation omitted), it is clear that the range of "reasonable" attorney fee rates varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys. Here, for the reasons stated, this Court finds that $350 per hour is not only within the prevailing rates charged in this district, but is otherwise a reasonable rate to charge for Mr. Mayerson's time given all of the circumstances present in this case.

However, with respect to the rates sought for Ms. Oren and Ms. Thivierge, this Court agrees that the rate of $225 per hour for a junior associate is unreasonably high and not justified by any special circumstances. Unlike Mr. Mayerson, who has had extensive experience litigating these types of cases, neither Ms. Oren nor Ms. Thivierge had such specialized legal[13] experience at the time they performed services on this case. Accordingly, based on the Court's knowledge of rates for attorneys in this district with comparable experience, the Court reduces their rate to $150 per hour.[14] This rate will also be applied to the time billed by Randi Rothberg.

---

[13]Although the Court acknowledges that Ms. Thivierge had some experience in the field of education and the preparation of IEPs, this experience does not appear to have been in her capacity as an attorney. While the Court recognizes that this prior experience may have value in terms of enhancing the quality of her client representation, the Court has not been provided with sufficient specific information to warrant increasing her fee rate above that of an average junior associate.

[14]This rate is well within the range of rates awarded in this district for associates' time, see, e.g., Duke v. County of Nassau, 2003 WL 23315463, at *3 (approving rate of $150 per hour for "recent law school graduate with little experience in the practice of civil rights law"); General Motors Corp. v. Villa Marin Chevrolet, Inc., 240 F. Supp. 2d at 188 (finding hourly rates of $140 to $225 to be reasonable for junior associates); Perdue v. City Univ. of New York, 13 F. Supp. 2d at 345 (noting, in 1998, that reasonable rates for associates' time ranged from $100 to $200

Additionally, the rate charged for work performed by the firm's paralegals seems high in light of rates charged for paralegal work in similar cases during the same time period. See, e.g., S.W. ex rel. N.W. v. Board of Educ., 257 F. Supp. 2d at 607-608 (noting that "[p]aralegals typically are billed at $75 per hour, unless they have significant experience"); Marisol A. v. Giuliani, 111 F. Supp. 2d at 388 (determining that a paralegal rate of $75 per hour "appear[ed] reasonable" in child welfare civil rights litigation). Accordingly, the Court will reduce the paralegal rate to $75 per hour in its calculation of the final fee award.

## C. Number of Hours Billed

Defendant also challenges the number of hours billed by plaintiffs' counsel, asserting that plaintiffs' counsel's request should be reduced by 20% to compensate for counsel's inadequate record-keeping and excessive hours billed. (Def.'s Mem. at 15-18). Defendant also urges that specific entries be cut or reduced for unnecessary work, for overstaffing, for items improperly billed at an attorney's rate, and for items which defendant argues are noncompensable. (Def.'s Mem. at 12-14, 18-21).

### 1) Lack of Specificity and Vague Entries

Defendant contends that counsel's records "are vague" and fail to describe, with

---

per hour); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1044 (E.D.N.Y. 1993) (awarding fees for associates using rates between $125 and $150 per hour in ERISA contributions case decided over 13 years ago), and is the same rate that was approved by the court in S.W. v. Board of Education for some of the same associates in the Mayerson firm who billed time on this case. 257 F. Supp. 2d at 607-608.

sufficient specificity, the work done and the costs incurred. (Def.'s Mem. at 16). It cites as specific examples entries in which Ms. Thivierge recorded a total of 32 hours for work described as "worked on transcripts for brief."[15] (Def.'s Mem. at 16-17). The defendant is correct that it is unclear what type of work these entries entailed and whether they should have been billed at a paralegal rate. Indeed, it is difficult, without knowing precisely what Ms. Thivierge was doing with the transcripts, to determine whether the number of hours spent on this task was reasonable.

Another example cited by the defendant is Ms. Thivierge's time billed for "worked on brief" or "worked on appeal." (Def.'s Mem. at 17). Specifically, there are 17 entries for a total of 83.5 hours spent by Ms. Thivierge on the brief and an additional five hours for "worked on appeal." There are 16.15 hours billed for "Federal Appeal" and two hours for "worked on appeal motions." (Id.) Whether the latter 18.15 hours represent a different type of work than the time spent on the brief and appeal is unclear. Defendant contends that 138.65 hours of Ms. Thivierge's time entries – almost 40% of the time billed to attorneys in plaintiff's total fee request through the work conducted on the federal appeal – fall into one of these vague categories.[16] (Id.)

The defendant is also critical of certain entries for Mr. Mayerson's time, which it argues are equally vague. Specifically, the defendant notes that the records reflect entries totalling 10.8 hours which state "Prepare for hearing," "Hearing prep," or "Prep for Hearing." (Def.'s Mem. at 17). It also cites 30.5 hours worth of Mr. Mayerson's entries that are described as work on "Post-

---

[15]The Court notes that these entries actually total 25 hours.

[16]The total must be reduced by seven hours to account for the miscalculation noted in the preceding paragraph. Accordingly, the cited percentage should also be adjusted.

hearing brief,"[17] which the defendant argues are unduly vague, and 14.7 hours of labor related to the "Post-hearing brief" accompanied by a handwritten "SRO Appeal" notation. (Id.) Thus, because the vagueness of the entries makes it impossible to discern whether the work was duplicative, the defendant urges a 20% across-the-board reduction. (Id. at 18).

Courts have reduced fee awards where the billing entries were overly vague. See, e.g., F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d at 1265 (rejecting entries for "Rev. Docs" and "Clients re testimony"); Amato v. City of Saratoga Springs, 991 F. Supp. 62, 65-66 (N.D.N.Y. 1998) (reducing award for vagueness due to entries such as "review discovery response," "prepare deposition questions," and "review research"); Dailey v. Societe Generale, 915 F. Supp. at 1328 (stating that entries such as "'telephone call,' 'consultation,' and 'review of documents' are not sufficiently specific so as to enable the Court to determine whether the hours billed were duplicative or excessive"); Pressman v. Estate of Steinvorth, 886 F. Supp. 365, 367-68 (S.D.N.Y. 1995) (denying compensation for entries such as "telephone conversation," "prepare correspondence," or "review of file" where no associated legal matter was specified); Orshan v. Macchiarola, 629 F. Supp. 1014, 1019-20 (E.D.N.Y. 1986) (reducing fees for entries such as "prepare correspondence" and "review correspondence").

However, the Second Circuit has stated that the district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994); see also Daiwa Special Asset Corp. v. Desnick, No. 00 CV 3856, 2002 WL 31767817, at *5 (S.D.N.Y. Dec. 3, 2002) (reducing fee

_____

[17]The Court notes that the entries cited by the defendant in this section actually total 17.3, and not 30.5, hours.

request of $2.2 million by 50% due in part to excessive billing). Particularly where the billing records are voluminous, "it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." Amato v. City of Saratoga Springs, 991 F. Supp. at 66 (citing Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992)).

Thus, where the fee application contains numerous vague entries, courts routinely impose an across-the-board reduction for vague entries. See, e.g., DeVito v. Hempstead China Shop, Inc., 831 F. Supp. at 1045 (reducing fee request by 40% due, in part, to insufficient descriptions of work performed), rev'd and remanded on other grounds, 38 F.3d 651 (2d Cir. 1994); Cabrera v. Fischler, 814 F. Supp. 269, 290 (E.D.N.Y.) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part and remanded on other grounds, 24 F.3d 372 (2d Cir. 1993), cert. denied, 513 U.S. 876 (1994); Nu-Life Constr. Corp. v. Board of Educ. of the City of New York, 795 F. Supp. 602, 607–08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of specificity in the descriptions of work performed); Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (finding a reduction of 15% from the fee request warranted based on vague descriptions of work performed).

Plaintiffs do not address the defendant's arguments about vague entries in their reply papers. However, having spent considerable time examining plaintiffs' counsel's billing records and studying the papers submitted by the parties, it is clear that the records suffer from a lack of specificity that severely hampers the Court's ability to determine the overall reasonableness of the time spent. Nonetheless, this Court finds that the records are too voluminous and extensive to do a line-by-line analysis of each of the entries. Accordingly, this Court concludes that a fair

and reasonable means for adjusting for the vague entries is to reduce by 20% the total number of hours requested in the fee application. This across-the-board reduction sufficiently compensates for the problems created by vague entries which do not break down the time spent on disparate tasks associated with each entry.

### 2) Excessive Number of Hours

Defendant argues that, in addition to the problems associated with vague billing entries, plaintiffs have billed for 191.4 hours of work "on a voluntary, unnecessary, and needlessly lengthy 52-page post-hearing submission ('post-hearing brief')." (Def.'s Mem. at 12). Specifically, defendant contends that plaintiffs have billed $41,685 for time spent on a post-hearing brief which was submitted to the Hearing Officer after the impartial hearing, despite the fact that New York Rules and Regulations governing appeals before the Commissioner of Education do not require the submission of such a post-hearing brief. (See Def.'s Mem. at 12) (citing N.Y. Comp. Codes R. & Regs. title 8, § 279.1). Defendant argues that the brief was "entirely voluntary," as plaintiffs' counsel apparently waived its oral closing on the record in favor of a written submission, and that the 191.4 hours dedicated to its creation were "clearly excessive."[18] (Id. at 13). Defendant further complains that the brief contains 27 pages cataloguing quotes from the hearing transcripts and 20 pages of "boiler-plate legal recitation regarding the IDEA." (Id. at 13-14) (citing Mayerson Aff., Ex. E at 5-16). In its opinion, not only did the Hearing Officer not require the assistance of this type of brief, but plaintiffs' counsel

---

[18]Defendants also complain about the vague entries relating to this post-hearing brief. That issue was addressed supra.

has not provided sufficient justification for billing 191.4 hours of work on an entirely voluntary submission. (Id.)

The law is clear that when reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d at 425 (citing Hensley v. Eckerhart, 461 U.S. at 434). In evaluating time sheets and expense records, some courts have dealt with the problem posed by excessive or redundant billing by simply subtracting the redundant hours from the amount of hours used to calculate the lodestar. See, e.g., Fernandez v. North Shore Orthopedic Surgery & Sports Med., P.C., 2000 WL 130637, at *6; Ruggiero v. Krzeminski, 928 F.2d at 564 (affirming the lower court's decision to subtract 32 hours for irrelevant research and for work performed on post-trial motions before calculating the lodestar). Other courts have used percentage reductions "as a practical means of trimming fat from a fee application." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1146 (finding percentage reductions to be an acceptable means for reducing fee applications); see also Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp., 215 F.R.D. at 64–65 (applying 10% reduction to excessive fee application); Rotella v. Board of Educ. of the City of New York, 2002 WL 59106, at *3–4 (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau County Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another attorney's fees by 30% for unnecessary and redundant time); Perdue v. City Univ. of New York, 13 F. Supp. 2d at 346 (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that the "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work," and deducting 40% of plaintiffs' hours).

28

The court in Daiwa Special Asset Corp. v. Desnick also recognized that what may be "reasonable" attorneys' fees and expenses in the context of an order requiring a losing party in a litigation to pay the prevailing party "is not the same as the reasonableness of a bill that a law firm might present to its own paying client." 2002 WL 31767817, at *2 (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)). Thus, "[i]n calculating the number of 'reasonable hours,' the court looks to 'its own familiarity with the case . . . and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" Clarke v. Frank, 960 F.2d at 1153 (internal citations omitted).

Although the Court, having reviewed the post-hearing brief, agrees that the time spent drafting the document was excessive, the Court does not agree that plaintiffs should be compensated for only 50 hours as suggested by the defendant. (Def.'s Mem. at 14). To begin, the Court points out that the vast majority of the time was billed by Ms. Thivierge, whose time has already been reduced by 20% to account for vague entries. Nonetheless, in order to deal with what appears to be excessive time billed on the project, the Court orders a further 15% reduction of Ms. Thivierge's time spent on the post-hearing brief. Having also considered Mr. Mayerson's time, which includes 63.9 hours working on this brief, the Court concludes that the amount of time he logged working on the post-hearing brief is similarly excessive. Accordingly, the Court will also apply a 15% reduction to his post-hearing brief time entries.

Additionally, the Court finds that the number of hours requested by plaintiffs' counsel for preparation of the fee application is excessive. "[T]he amount of time spent on a fee submission must be reasonable." Upjohn Co. v. Medtron Labs., Inc., No. 87 CV 5773, 2005 WL 3078232, at *1 (S.D.N.Y. Nov. 16, 2005) (finding the 137.1 hours spent preparing the fee application to be

29

unreasonable); see also DiFilippo v. Morizio, 759 F.2d at 236 (finding the 42 hours spent on the fee application to be unreasonable as a matter of law). Mr. Mayerson contends that the amount of time invested on the fee application was necessary "[i]n order to zealously represent plaintiffs" and "deal with the challenges that defendant has raised, irrespective of their merit." (See Mayerson Reply Aff. ¶¶ 5-6). After reviewing the papers submitted, however, the Court finds that the number of hours requested – 21.70 hours totalling $9,126.00 – is excessive given the types of complaints raised by the defendant in its opposition papers and the thoroughness of plaintiffs' counsel's responses to such complaints. Therefore, the Court will reduce by 20% the total number of hours billed for preparation of the fee application.

Furthermore, counsel complains that Ms. Thivierge billed a number of hours at an attorney's rate that should be compensated at the rate of a paralegal. (Def.'s Mem. at 20-21). Specifically, the defendant claims that Ms. Thivierge billed 2.12 hours for "Federal Appeal filed appeal motions" and, in a separate entry, billed three hours for "Federal Appeal prepared and filed appeal." Defendant argues that filing an appeal or motion is work that should be performed by a paralegal and that this time should therefore be billed at a paralegal's rate.[19] See, e.g., Entertainment by J&J, Inc. v. Friends II, Inc., No. 02 CV 585, 2003 WL 1990414, at *6 (S.D.N.Y. Apr. 25, 2003); McGrath v. Toys "R" Us, Inc., No. 01 CV 071, 2002 U.S. Dist.

---

[19]Defendant also argues that Mr. Mayerson's time should be reduced because his billing entries reflecting time spent attending various hearings are inaccurate when compared with the time recorded by the stenographer in the hearing transcripts. (See Def.'s Mem. at 19) (noting that counsel's records reflect 26 hours and 54 minutes while the transcripts reflect 17 hours and 35 minutes). As plaintiffs' counsel points out, the difference in times reflect the fact that time was spent in preparation and follow-up, plus counsel notes that he did not bill defendant for five hearing dates worth of travel time. (Mayerson Reply Aff. ¶¶ 19-21). The Court does not find the discrepancy to be probative in light of counsel's explanation, and declines to reduce the award for this reason.

LEXIS 22610, at *8 (E.D.N.Y. Oct. 16, 2002). The Court agrees with the defendant that the stated tasks are more appropriately billed at a paralegal rate, and will adjust the fee award accordingly.[20]

### 3) Non-Compensable Time

The defendant also complains that the entries reflect time spent by two attorneys attending the same conference or hearing before the Court. (Def.'s Mem. at 18). Citing Carey, defendant argues that determinations regarding overstaffing are appropriate in the context of a fee shifting case and should be determined by the court based on its "own assessment of what is appropriate for the scope and complexity of the particular litigation." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1146; see also Hurley v. Coombe, No. 77 CV 3847, 1996 WL 46889, at *4 (S.D.N.Y. Feb. 6, 1996) (authorizing fees for redundant work in certain instances).

Defendant complains specifically about an appearance held before this Court on March 11, 2003 which was attended by both Mr. Mayerson and Ms. Thivierge. (Def.'s Mem. at 19).

---

[20]"[I]t is the responsibility of the applicant to make separate time entries for each activity." Wilder v. Bernstein, 975 F. Supp. 276, 286 (S.D.N.Y. 1997) (internal citation omitted). Numerous courts in this Circuit have noted that a fee applicant's failure to do so justifies a reduction in the fee award, as it renders it difficult for the court to assess the reasonableness of the time spent on each activity and the appropriate rate to apply. See, e.g., Williams v. New York City Hous. Auth., 975 F. Supp. 317, 327-28 (S.D.N.Y. 1997); Wilder v. Bernstein, 975 F. Supp. at 286. Here, it is possible that Ms. Thivierge engaged in some preparation of the federal appeal, which could be billed at an attorney's rate, during the billing entries cited by the defendant. However, it is impossible for the Court to assess the number of hours engaged in such activity when the time devoted to legal work is combined into a single entry with time spent on clerical work. Therefore, the Court will calculate the fee award for the entire 5.12 hours at the paralegal rate.

Arguing that this case involved the appeal of "a previously litigated and decided administrative hearing," defendant contends that there was no need for both counsel to be present. Therefore, it seeks to strike the .87 hours billed by Ms. Thivierge for the time spent at the hearing as well as her associated travel time. (Id.)

Courts have reduced fee applications where there was extensive overstaffing. See, e.g., Daiwa Special Asset Corp. v. Desnick, 2002 WL 31767817, at *3. In Daiwa, the court reduced the plaintiff's fee request based on its view that, because 17 attorneys and summer associates worked on the case, plaintiff's fees were excessive in part because of the considerable amount of time spent by each attorney familiarizing himself with the file. Id. In addition, the court found that meetings, conferences and depositions were often overstaffed with multiple attorneys. Id.

While this Court has previously reduced fee applications where there was a pattern of overstaffing, see Nicholson v. Williams, 2004 WL 4780498, at *24-25 (reducing a fee award where nine attorneys and over twenty paralegals, law students and interns staffed a single case), here the Court finds that it was not unreasonable for two attorneys to attend the conference where issues of substance might be addressed. Particularly here, where Ms. Thivierge spent a significant amount of time on the matter, was the principal associate assigned to the case, and was the only other attorney to attend the conference, the Court concludes that her presence does not constitute overstaffing. Therefore, the Court declines to cut Ms. Thivierge's time from the fee award.

D. Costs

32

Plaintiffs request reimbursement for $1,084.13 in costs. (See Mayerson Aff., Ex. F). Defendant contends that several costs should be excluded as unnecessary or excessive. (Def.'s Mem. at 19-20).

Counsel for the defendant has identified a number of time entries billed for "Federal Express" and "Messenger Service," totalling $394.13, which the defendant argues are unnecessary and excessive. The Court understands that some costs of this variety are expected to be incurred during the course of litigation. See, e.g., S.W. ex rel. N.W. v. Board of Educ., 257 F. Supp. 2d at 609 (awarding $218.15 in costs for photocopying, Federal Express, and filing fees); Luciano v. Olsten Corp., 925 F. Supp. 956, 967 (E.D.N.Y. 1996) (awarding plaintiff costs that included amounts incurred for Federal Express and messenger services, while disallowing costs attributed to excessive photocopying and unnecessary hotel stays), aff'd, 109 F.3d 111 (2d Cir. 1997). However, without more information with which to judge the reasonableness of such expenditures, the Court will reduce the costs of such items by 50% in calculating the final award. Finally, four entries are billed as "Case Conference Related," and one as "Aetna Judicial Services," all with no other information. Even though these disbursements total only $168.24, the Court agrees that the descriptions provided are too vague to determine whether they are compensable.

## CONCLUSION

Of plaintiff's request for reimbursement for 375.95 hours, the Court Orders that: (1) Mr. Mayerson be compensated at $350 per hour; (2) Ms. Thivierge, Ms. Oren, and Ms. Rothberg be compensated at $150 per hour; 3) paralegal time be compensated at $75 per hour; 4) an across-

33

the-board reduction of 20% be calculated to account for vague entries; 5) an additional 15%

reduction be calculated with respect to those hours billed by Mr. Mayerson and Ms. Thivierge on

the post-hearing brief to account for excessive time logged; 6) an additional across-the-board

reduction of 20% be calculated with respect to those hours logged in preparation of the fee

application to account for excessive hours billed; and 7) 5.12 hours of Ms. Thivierge's billed

time be calculated using a paralegal rate. Finally, the Court Orders costs be awarded in the total

adjusted amount of $365.31, as specified supra. The tables set forth in Attachments A and B

show the resulting computations.

The Clerk is directed to send copies of this Memorandum and Order to the parties

either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**
Dated: Brooklyn, New York
September 25, 2006

Cheryl L. Pollak
United States Magistrate Judge

34

| FEES REQUESTED | HOURS | BILLED AT | TOTAL $98,467.62 |
|---|---|---|---|
| **TOTAL FEES AWARDED** | | | |
| ▓▓▓▓▓▓▓▓▓▓ | ▓ | ▓ | ▓ |
| Total Hours Awarded after adjustments for: <br><br> 1) Billable Hours at Modified Rate | | | |
| a) Billable hours discounted by 20% to account for vague entries[21] | 73.176 | $350/hour | $  25,611.60 |
| b) Hours on post-hearing brief discounted by 35% for vague entries and excessive hours[22] | 41.535 | $350/hour | $  14,537.25 |
| c) Hours on fee application discounted by 40% for vague entries and excessive hours[23] | 12.36 | $350/hour | $   4,326.00 |

---

[21]This total number of hours excludes the hours that Mr. Mayerson billed on the post-hearing brief and those hours billed on the fee application itself, as the fees for those hours are calculated separately.

[22]The 35% discount applied to Mr. Mayerson's hours logged on the post-hearing brief accounts for both the 20% across-the-board reduction for vague entries and the additional 15% reduction for excessive hours logged.

[23]The 40% discount applied to Mr. Mayerson's hours logged on the fee application accounts for both the 20% across-the-board reduction for vague entries and the additional 20% reduction for excessive hours logged.

| | | | |
|---|---|---|---|
| 2) Travel Time discounted by 20% to account for vague entries | 1.424 | $175/hour | $ 249.20 |
| **Christina Thivierge** | | | |
| Total Hours Awarded after adjustments for:<br><br>1) Billable hours at junior associate rate | | | |
| a) Billable hours discounted by 20% to account for vague entries[24] | 53.00 | $150/hour | $ 7,950.00 |
| c) Hours on post-hearing brief discounted by 35% for vague entries and excessive hours[25] | 70.525 | $150/hour | $ 10,578.75 |
| 2) Billable hours at paralegal rate discounted by 20% to account for vague entries | 4.096 | $75/hour | $ 307.20 |
| 3) Travel time, discounted by 20% to account for vague entries | 1.424 | $75/hour | $ 106.80 |
| **Amanda Hood** | | | |
| 1) Billable hours at junior associate rate, discounted by 20% to account for vague entries | 0.8 | $150/hour | $ 120.00 |

---

[24]This total number of hours excludes the hours that Ms. Thivierge billed on the post-hearing brief, as the fee for those hours is calculated separately.

[25]The 35% discount applied to Ms. Thivierge's hours logged on the post-hearing brief accounts for both the 20% reduction for vague entries and the additional 15% reduction for excessive hours logged.

| | | | |
|---|---|---|---|
| 2) Billable hours at paralegal rates, discounted by 20% to account for vague entries | 1.40 | $55/hour[26] | $ 77.00 |
| | 3.40 | $75/hour | $ 255.00 |
| ~~Rachel Rothberg~~ | | | |
| 1) Billable hours at junior associate rate, discounted by 40% to account for vague entries and excessive hours related to fee application[27] | 0.66 | $150/hour | $ 99.00 |
| ~~Cathy Crane~~ | | | |
| 1) Billable hours at paralegal rate, discounted by 20% to account for vague entries | 5.72 | $75/hour | $ 429.00 |
| ~~Timothy Mahoney~~ | | | |
| 1) Billable hours at paralegal rate, discounted by 20% to account for vague entries | 1.04 | $75/hour | $ 78.00 |

**TOTAL FEES AWARDED**                                          **$ 64,724.80**

---

[26] According to time records submitted by Mr. Mayerson, services performed by Ms. Oren in various entries early in the case – totalling 1.75 hours – were billed at $55 per hour. (See Mayerson Aff., Ex. F). In accordance with counsel's records, the Court has applied that rate in its own calculations. In those instance in which the records indicated a higher rate for Ms. Oren's billing time as a non-attorney, the rate has been modified to be in line with the rate charged for paralegal time.

[27] The 40% discount applied to Ms. Rothberg's hours logged on the fee application accounts for both the 20% reduction for vague entries and the additional 20% reduction for excessive hours logged.

## ATTACHMENT B
## COMPUTATION OF COSTS

| COSTS REQUESTED | $ | 1,084.13 |
|---|---|---|
| Costs Awarded after subtracting: | | |
|     50% of "Federal Express"/"Messenger" costs | $ | 197.07 |
|     Vague cost entries | $ | 168.24 |
| **TOTAL COSTS AWARDED** | **$** | **718.82** |

**TOTAL AMOUNT OF FEES AND COSTS AWARDED**     **$ 65,443.62**